UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JUSTIN MENZIA
602 North Church Street
Watertown, WI 53098

        Plaintiff,

      vs.                                Case No: 14-CV-886

JBM SECURITY SYSTEMS LLC          **JURY TRIAL DEMANDED**
a/k/a JBM PATROL & PROTECTION
131 West Layton Avenue, Suite 208
Milwaukee, WI 53207

        Defendant.

## COMPLAINT

COMES NOW the Plaintiff, Justin Menzia, by his counsel, WALCHESKE & LUZI, LLC, as and for a claim against the Defendant, alleges and shows to the court as follows:

1.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this case involves a federal question under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

2.      This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's state law claims, because they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in this District is proper pursuant to 28 U.S.C. §1391(b) and (c), because a substantial portion of the events or omissions giving rise to the claims occurred in this District,

and Defendant has substantial and systematic contacts in this District.

4.      Plaintiff, Justin Menzia, is an adult male resident of the State of Wisconsin residing in Dodge County with a post office address of 602 North Church Street, Watertown, Wisconsin 53098.

5.      Defendant, JBM Security Systems LLC, is a Wisconsin corporation with a principal office of 131 West Layton Avenue, Suite 208, Milwaukee, Wisconsin 53207.

6.      Defendant, also known as JBM Patrol & Protection, provides twenty-four (24) hour security services to residences and businesses.

7.      Upon information and belief, Defendant operates locations in Madison, Wisconsin; Milwaukee, Wisconsin; Edina, Minnesota; Dubuque, Iowa; and Northbrook, Illinois.

8.      Mr. Menzia was employed by Defendant as a non-exempt, hourly employee at Defendant's Milwaukee, Wisconsin location within the three years preceding the filing of this Complaint.

9.      Mr. Menzia's last day of work at Defendant was on November 26, 2013.

10.     In or about November 2012, Defendant hired Mr. Menzia as a Patrol Officer based at Defendant's Milwaukee, Wisconsin location.

11.     As a Patrol Officer at Defendant, Mr. Menzia was a non-exempt, hourly employee and earned $12.00 per hour.

12.     Mr. Menzia was employed full-time (approximately forty (40) hours or more per work week) as a Patrol Officer at Defendant.

13.     As a Patrol Officer at Defendant, Mr. Menzia was responsible for patrolling private property while utilizing a marked patrol vehicle.  For each property that Mr. Menzia patrolled, Mr.

Menzia was tasked with ensuring that exterior doors were secure, that security devices (such as, but not limited to, fences) were in working order, and that no unwanted or unlawful activity was occurring on the property.

14.     As a Patrol Officer at Defendant, and during his scheduled shift, Mr. Menzia was additionally responsible for responding to service calls (a request to respond to any given incident) from clients and responding to commercial and residential alarm calls.

15.     In or about August 2013, Defendant promoted Mr. Menzia to Officer in Charge.

16.     As Officer in Charge at Defendant, Mr. Menzia was a non-exempt, hourly employee and earned $12.00 per hour.

17.     Mr. Menzia was employed full-time (approximately forty (40) hours or more per work week) as Officer in Charge at Defendant.

18.     As Officer in Charge at Defendant, Mr. Menzia was responsible for the maintenance and direction of the Patrol Division, assisting the Sergeant of Operations with administrative and office tasks, keeping and maintaining records in the office, and any other duties as assigned by Defendant, in addition to the duties and responsibilities Mr. Menzia performed as a Patrol Officer.

19.     During Mr. Menzia's employment at Defendant and pursuant to Defendant's policies, Mr. Menzia was required to respond to commercial and residential alarms until 7:00 a.m. each day upon which Mr. Menzia worked a shift.

20.     As a consequence of Defendant's policies requiring that he respond to commercial and residential alarms until 7:00 a.m. each day upon which Mr. Menzia worked a shift, Mr. Menzia was required to continue responding to alarm calls after he had ended his scheduled shift.

21.     During Mr. Menzia's employment at Defendant, Defendant told Mr. Menzia that it

would compensate him with a flat rate of $15.00 for each alarm to which he responded while he was "off-duty," meaning while he was not physically at work at Defendant or otherwise working a scheduled shift.

22.     During Mr. Menzia's employment at Defendant, Mr. Menzia responded to alarms when he was "off-duty."

23.     Defendant did not properly compensate Mr. Menzia for the alarms he responded to while "off-duty."

24.     During Mr. Menzia's employment at Defendant, James B. Mankowski, President, directed Mr. Menzia to not end his shift until all of his security patrol stops were completed.

25.     During Mr. Menzia's employment at Defendant, Mankowski authorized Mr. Menzia and its other Officers at Defendant's Milwaukee, Wisconsin location to work overtime, if necessary.

26.     While Mr. Menzia was employed at Defendant as Officer in Charge, Defendant required Mr. Menzia to perform office work, in addition to his patrol duties.

27.     During his employment at Defendant, Mr. Menzia frequently worked in excess of forty (40) hours per week.

28.     During Mr. Menzia's employment at Defendant, Defendant suffered or permitted Mr. Menzia to work without appropriately compensating Mr. Menzia for each hour worked.

29.     During Mr. Menzia's employment at Defendant, Defendant required Mr. Menzia to record his time worked at the start and end of his shifts by use of a phone-based, computerized time clock.

30.     During Mr. Menzia's employment at Defendant, Mr. Menzia clocked-in and out via Defendant's computerized time clock by entering his badge number.

4

31.     Immediately after clocking-in for a shift, Mr. Menzia began performing compensable work.

32.     Immediately prior to clocking-out for a shift, Mr. Menzia performed compensable work.

33.     Upon information and belief, Defendant's computerized time clock did not accurately record Mr. Menzia's hours worked.

34.     Upon information and belief, when Mr. Menzia clocked-in using Defendant's computerized time clock, the time clock recorded Mr. Menzia's clock-in time as the time his shift was scheduled to start, rather than the time Mr. Menzia actually clocked-in.

35.     Upon information and belief, when Mr. Menzia clocked-out using Defendant's computerized time clock, the time clock recorded Mr. Menzia's clock-out time as the time his shift was scheduled to end, rather than the time Mr. Menzia actually clocked-out.

36.     During Mr. Menzia's employment at Defendant, and in addition to using Defendant's computerized time clock, Defendant required Mr. Menzia to manually record his time on a physical timecard.

37.     During Mr. Menzia's employment at Defendant, Mr. Menzia transmitted his handwritten timecards to Defendant via facsimile biweekly, at the end of each pay period.

38.     Mr. Menzia accurately recorded his hours worked on his handwritten timecards while he was employed at Defendant.

39.     Defendant received each of Mr. Menzia's handwritten timecards that he submitted to it via facsimile.

40.     At no time during Mr. Menzia's employment at Defendant did Mankowski or any

5

other member of Defendant's management inform Mr. Menzia that a "special" or "different" process had to be followed in order to record or be compensated for work performed in excess of forty (40) hours, other than to simply submit his handwritten timecards at the end of each biweekly pay period.

41.     During Mr. Menzia's employment at Defendant, Defendant occasionally compensated him for overtime hours worked.

42.     During Mr. Menzia's employment at Defendant, Defendant did not compensate him for all overtime hours worked.

43.     Mr. Menzia did not do anything differently or use a different process to report his overtime hours worked to Defendant for which Defendant properly compensated him, as compared to occasions when Defendant did not properly compensate him for those hours worked.

44.     At no time during Mr. Menzia's employment did Defendant require Mr. Menzia to receive explicit permission or authorization to work overtime.

45.     At no time during Mr. Menzia's employment at Defendant did Mr. Menzia seek explicit permission or authorization to work overtime prior to so doing, including occasions for which Defendant properly compensated him for his overtime hours worked.

46.     On November 15, 2013, Mr. Menzia emailed Stephanie Schanke, Administrator at Defendant, complaining about Defendant's failure to properly compensate him for all overtime hours worked ("Mr. Menzia's November 15, 2013 email").

47.     Mr. Menzia's November 15, 2013 email stated in part, "I spoke with an attorney this morning and was advised that according to the Fair Labor Standards Act (aka FLSA) I am due that time when I am required to work overtime.  Per current orders I am REQUIRED to work overtime."

6

48.     On November 24, 2013, Mankowski received an email from Mr. Menzia in which Mr. Menzia provided two-weeks' notice of his intention to voluntarily resign his employment at Defendant ("Mr. Menzia's November 24, 2013 email").

49.     Subsequent to Defendant's receipt of Mr. Menzia's November 24, 2013 email, Mr. Menzia received an email from John Kerr, Regional Manager, informing him that he (Kerr) would meet with Mr. Menzia on Tuesday, November 26, 2013, at Defendant's Milwaukee, Wisconsin location.

50.     On November 26, 2013, Kerr met with Mr. Menzia at Defendant's Milwaukee, Wisconsin location ("the November 26, 2013 meeting").

51.     During the November 26, 2013 meeting, Kerr told Mr. Menzia that Defendant was accepting Mr. Menzia's resignation immediately and terminated his employment.

52.     Mr. Menzia is unable to precisely identify the amount of overtime worked and unpaid in each workweek at issue because he does not have access to records which are or should be in the possession of Defendant and which would show the precise amount of work performed by Mr. Menzia.

53.     Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damage to Mr. Menzia.

### FIRST CAUSE OF ACTION – VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED

54.     Mr. Menzia realleges and incorporates paragraphs 1-53 of this Complaint by reference.

55.     At all times material hereto, Mr. Menzia was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq.*

7

56.     At all times material hereto, Defendant was an employer of Mr. Menzia as provided under the FLSA.

57.     Defendant violated the FLSA by failing to account for and compensate Mr. Menzia for overtime premium pay for each hour he worked in excess of forty (40) hours each workweek.

58.     Defendant suffered and permitted Mr. Menzia to perform compensable work before and after the end of his scheduled shift without pay for that work.

59.     The effect of such practices was for Defendant to deny Mr. Menzia his agreed upon wage for the hours worked that were not counted as work, including overtime wages for hours worked in excess of forty (40) hours in a workweek.

60.     In perpetrating these unlawful practices, Defendant has also willfully failed to keep accurate records for all time worked by Mr. Menzia.

61.     The FLSA regulates, among other things, the payment of an overtime premium by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of good for commerce.  29 U.S.C. § 20(a)(1).

62.     Defendant was and is subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in commerce and/or its employees are engaged in commerce, as defined in FLSA, 29 U.S.C. § 203(b).

63.     Defendant's failure to properly compensate Mr. Menzia for all compensable work time was willfully perpetrated.  Defendant has not acted in good faith or with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and as a result thereof, Mr. Menzia is entitled to recover an award of liquidated damages in an amount equal to the amount

8

of unpaid overtime premium pay described above pursuant to FLSA, 29 U.S.C. § 216(b). Alternatively, should the Court find that Defendant did not act willfully in failing to pay overtime premium pay wages, Mr. Menzia is entitled to an award of pre-judgment interest at the applicable legal rate.

64.    As a result of the aforesaid willful violations of the FLSA's provisions, overtime compensation has been unlawfully withheld by Defendant from Mr. Menzia, for which Defendant is liable pursuant to 29 U.S.C. § 216(b).

65.    Mr. Menzia is entitled to damages equal to the mandated overtime premium pay within the three years preceding the date of filing of this Complaint, plus period of equitable tolling, because Defendant acted willfully and knew or showed reckless disregard for whether its conduct was prohibited by the FLSA.

66.    Pursuant to FLSA, 29 U.S.C. § 216(b), successful plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

## SECOND CAUSE OF ACTION – RETALIATION UNDER THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED

67.    Mr. Menzia realleges and incorporates paragraphs 1-66 of this Complaint by reference.

68.    Mr. Menzia's November 15, 2013 email expressly states his belief that Defendant was not properly compensating him pursuant to the FLSA and complains of unpaid work time.

69.    Mr. Menzia's November 15, 2013 email constitutes "filing a complaint" within the meaning of the FLSA.

70.    Defendant violated the FLSA, 29 U.S.C. § 215(a)(3) by terminating Mr. Menzia's

9

employment because he made a complaint and indicated that he planned to take legal action against Defendant relating to its alleged violations of the overtime provisions of the FLSA.

71.    FLSA, 29 U.S.C. § 216(b) makes an employer who violates FLSA, 29 U.S.C. § 215(a)(3) liable for such legal or equitable relief as may be appropriate to effectuate the purposes of Section 215 (a)(3), including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

72.    Defendant retaliated against Mr. Menzia by terminating his employment for exercising his rights under the FLSA, 29 U.S.C. § 201 *et seq.*

**THIRD CAUSE OF ACTION – VIOLATION OF WISCONSIN WAGE PAYMENT AND COLLECTION LAWS – UNPAID OVERTIME**

73.    Mr. Menzia realleges and incorporates paragraphs 1-72 of this Complaint by reference.

74.    At all relevant times, Mr. Menzia was an employee of Defendant within the meaning of Wis. Stat. § 109.01(1r).

75.    At all relevant times, Mr. Menzia was an employee of Defendant within the meaning of Wis. Stat. § 103.001(5).

76.    At all relevant times, Mr. Menzia was an employee of Defendant within the meaning of Wis. Stat. § 104.01(2)(a).

77.    At all relevant times, Defendant was an employer of Mr. Menzia within the meaning of Wis. Stat. § 109.01(2).

78.    At all relevant times, Defendant was an employer of Mr. Menzia within the meaning of Wis. Stat. § 103.001(6).

79.     At all relevant times, Defendant was an employer of Mr. Menzia within the meaning of Wis. Stat. § 104.01(3)(a).

80.     At all relevant times, Defendant was an employer of Mr. Menzia within the meaning of Wis. Admin.  § DWD 272.01(5).

81.     At all times material hereto, Mr. Menzia regularly performed activities that were an integral and indispensable part of his principal activities without receiving compensation for these activities.

82.     At all times material hereto, Defendant had common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing to properly pay Mr. Menzia overtime compensation.

83.     The foregoing conduct, as alleged above, constitutes a willful violation of the Wisconsin Wage Payment and Collection Laws ("the WWPCL").

84.     Defendant willfully failed to pay Mr. Menzia overtime premium compensation for all hours worked in excess of forty (40) hours a week, in violation of the WWPCL.

85.     As set forth above, Mr. Menzia sustained losses in his compensation as a proximate result of Defendant's violations.  Accordingly, Mr. Menzia seeks damages in the amount of his respective unpaid compensation, injunctive relief requiring Defendant to cease and desist from its violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper.  Under Wis. Stat. § 109.11, Mr. Menzia may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

86. Mr. Menzia seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant, pursuant to the WWPCL.

**FOURTH CAUSE OF ACTION – VIOLATION OF WISCONSIN WAGE PAYMENT AND COLLECTION LAWS – FAILURE TO PAY AGREED UPON WAGE**

87. Mr. Menzia realleges and incorporates paragraphs 1-86 of this Complaint by reference.

88. Mr. Menzia has been entitled payment from Defendant at the agreed upon wage, as defined in Wis. Stat. § 109.01(3), for each hour worked by Mr. Menzia pursuant to Wis. Stat. § 109.03.

89. Defendant violated the WWPCL by failing to properly compensate Mr. Menzia for each hour he worked by willfully engaged in inaccurate timekeeping as described above.

90. As set forth above, Mr. Menzia sustained losses in his compensation as a proximate result of Defendant's violations. Accordingly, Mr. Menzia seeks damages in the amount of his unpaid compensation, injunctive relief requiring Defendant to cease and desist from their violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Mr. Menzia may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

91. Mr. Menzia seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant, pursuant to the WWPCL.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Issue an Order, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202,

12

declaring Defendants' actions as described in the Complaint as unlawful and in violation of the FLSA and Wisconsin Law and applicable regulations and are and were willful as defined in the FLSA and Wisconsin Law;

2.  Issue an Order directing and requiring Defendant to pay Mr. Menzia damages in the form of reimbursement for unpaid overtime wages for all time spent performing compensable work for which he was not paid pursuant to the rate provided by the FLSA and WWPCL;

3.  Issue an Order directing and requiring Defendant to pay Mr. Menzia damages in the form of reimbursement for unpaid agreed upon wages for all time spent performing compensable work for which he was not paid pursuant to the rate provided by the FLSA and WWPCL;

4.  Issue an Order directing and requiring Defendant to pay Mr. Menzia liquidated damages pursuant to the FLSA and WWPCL in an amount equal to, and in addition to the amount of wages and overtime wages owed to him;

5.  Issue an Order directing and requiring Defendant to reinstate Mr. Menzia to his former position without any loss of seniority or benefits;

6.  Issue an Order directing and requiring Defendant to pay Mr. Menzia damages in the form of back pay from the time of his termination until the date of his reinstatement as a result of Defendant's unlawful termination of Plaintiff;

7.  Issue an Order directing Defendant to reimburse Mr. Menzia for the costs and attorneys' fees expended in the course of litigating this action, pre-judgment and post-judgment interest; and

13

8.  Grant to Mr. Menzia whatever other relief this Court deems just and equitable.


**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**


Dated this 25th day of July, 2014.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff


s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Jesse R. Dill, State Bar No. 1061704

WALCHESKE & LUZI, LLC
200 South Executive Drive, Suite 101
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
jdill@walcheskeluzi.com

14